UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

CHARLES MARTINEZ,

                Plaintiff,         14 Civ. 632

  -against-                    OPINION

THE CITY OF NEW YORK,

                Defendant.

------------------------------------X

A P P E A R A N C E S:

    Attorneys for Plaintiff

    FRIEDMAN, JAMES & BUCHSBAUM LLP
    132 Nassau Street, Suite 900
    New York, NY 10038
    By:  Andrew V. Buchsbaum, Esq.
         Bernard D. Friedman, Esq.

    Attorneys for Defendant

    NEW YORK CITY LAW DEPARTMENT
    100 Church Street
    New York, NY 10007
    By:  David L. Depugh, Esq.

**Sweet, D. J.,**

The City of New York (the "City" or the "Defendant") has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking to dismiss the complaint of Plaintiff Charles Martinez ("Martinez" or the "Plaintiff"), which alleges damages resulting from an accident on a vessel that he claims was unseaworthy. Based upon the facts and conclusions set forth below, the City's motion is granted in part and denied in part.

**Prior Proceedings**

Martinez initiated this action on January 31, 2014, by filing a complaint under the Jones Act alleging that he was injured by the Defendant's negligence while working on a City-owned vessel. (See generally Complaint, Dkt. No. 1.) The City Answered on February 24, 2014. (Dkt. No. 4.)

After discovery came to a close, the City filed the instant motion for summary judgment on September 25, 2015. (Dkt. No. 11.) The Plaintiff filed his opposition papers on October 30, 2015 (Dkt. Nos. 19-23), and the City filed its reply on November

24, 2015. (Dkt. No. 26.) Oral argument was held on December 2, 2015, and the motion was marked fully submitted.

**Facts**

The facts have been set forth in the City's Local Civil Rule 56.1 statements (Dkt. No. 17) and are not in dispute except as noted below.

Martinez was employed by the New York City Department of Transportation, Ferries division, working as a marine oiler on the ferry *John F. Kennedy*. On August 12, 2013, Martinez was involved in an accident, which he alleges took place while climbing out of the ferry's southeastern steering compartment on a ladder. According to Martinez' Counterstatement of Material Facts, he fell "while he was between the fourth and fifth ladder rungs."

Martinez was taken to Staten Island University Hospital with injuries to his right knee. The *Kennedy* was built and launched in 1965, and complied with United States Coast Guard and American Bureau of Shipping standards applicable at the time.

**Applicable Standard**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249). Where there are ambiguities in the factual evidence presented, the Court draws all inferences in favor of the nonmoving party. Chiang v. Donahoe, 579 F. App'x 39, 40 (2d Cir. 2014).

The Jones Act, 46 U.S.C. § 30104, provides seamen injured during the course of their employment with a private right of

action against their employer in federal court. The standard for a Jones Act claim is a "low and liberal" one, requiring only that "the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest* in producing the injury . . . for which damages are sought." Diebold v. Moore McCormack Bulk Transp. Lines, Inc., 805 F.2d 55, 57 (2d Cir. 1986) (emphasis in the original) (citing Rogers v. Mo. Pac. R. Co., 352 U.S. 500, 506 (1957). However, a Jones Act plaintiff must nonetheless establish a prima facie case of negligence by showing that 1) a dangerous condition actually existed on the ship, 2) the defendant shipowner had notice of the dangerous condition and should have reasonably anticipated the plaintiff might be injured by it, and 3) if the shipowner was negligent, such negligence proximately caused the plaintiff's injuries. Golden v. City of New York, No. 14 Civ. 2229, 2015 WL 2237540, at *2 (S.D.N.Y. May 14, 2015) (citing Diebold, 805 F.2d at 58).

The doctrine of seaworthiness establishes that every shipowner "owes an absolute and non-delegable duty to seamen properly aboard its vessel to provide a seaworthy ship. Although it has no obligation to provide an accident free vessel, the shipowner does have a duty to furnish a vessel and

4

appurtenances reasonably fit for their intended use." In re Moran Towing Corp., 984 F. Supp. 2d 150, 175 (S.D.N.Y. 2013) (quotation omitted), vacated in part on other grounds sub nom. Moran Towing Corp. v. Young, 597 F. App'x 33 (2d Cir. 2015). The standard is not perfection, but reasonable fitness. Id. (citing Pellegrino v. A.H. Bull S.S. Co., 309 F. Supp. 839, 842 (S.D.N.Y. 1969).

**The Motion is Granted in Part and Denied in Part**

The Plaintiff's Complaint was wholly conclusory, including no specifics about the accident that he suffered or how it came to pass. The Complaint's sole substantive allegation regarding the accident was that Martinez "sustained injuries to his right knee when he slipped and fell from a ladder located in the vessel's engine room." (Complaint, Dkt. No. 1, ¶6.) In his summary judgment briefing, Martinez puts forward three substantive theories: first, that the *Kennedy* was unseaworthy because the ladder he climbed lacked proper handholds; second, that a dangerous condition existed because the deck of the steering compartment was covered with slippery oil and grease; and third, that the City was negligent under the Jones Act for

5

failing to provide adequate handholds or fixing the leaks that led to the compartment's slippery floor.  The Plaintiff also claims that he was entitled to medical expenses under the doctrine of maintenance and cure, which the City failed to pay.

The Ladder Was Not Defective

The Plaintiff's claims based on the design of the ladder, whether stated under the unseaworthiness doctrine or under the Jones Act, cannot succeed because he has not established that the ladder was defective, and therefore the cause of the accident.  His central allegation regarding the ladder is that it lacked hand-holds separate from its rungs, so that once a person reaches the top rung, there is "no available handhold." (See Pl.'s Opp. Br., Dkt. No. 19, at 5; Pl.'s Local Civil Rule 56.1 Statement, Dkt. No. 20, ¶40.)  Although the record shows that the ladder terminates at a hatch, the sides of which (known nautically as a "coaming") are raised and can be held on to once a climber reaches the top of the ladder (see Report of Dr. Kenneth Fisher, Dkt. No. 22-1 (the "Fisher Report") at 5; Picture, Dkt. No. 22-3 at 2), Martinez does not establish where he was on the ladder, nor that "the next available handhold

6

[was] the sides of the opened hatch over."[1]  (Pl.'s Local Civil Rule 56.1 Statement, Dkt. No. 20, ¶ 34.)  The hatch cover is secured to a stanchion, but tilts away from the climber as he exits.  (Fisher Report at 5.)  Martinez contends that the narrow width of the hatch required him to "squirm sideways to some extent", making it impossible to hold onto the hatch cover.  (Pl.'s Local Civil Rule 56.1 Statement ¶¶ 37-40).

The Plaintiff's expert, Dr. Kenneth Fisher, concedes that the *Kennedy* complied with the applicable Coast Guard and American Bureau of Shipping requirements in place at the time it launched, but cites to authorities that recommend separate handgrabs at the top of a ladder.  (See Fisher Report at 13-14.)  Dr. Fisher also concedes that the post-launch modifications are not mandatory for the ferry "as far as the US Coast Guard is concerned."  (Fisher Report at 7.)

The City points to a number of New York State cases for the proposition that non-mandatory recommendations and guidelines cannot be relied on to prove that a situation is inherently dangerous or defective, e.g., Capotosto v. Roman Catholic Diocese of Rockville Centre, 2 A.D.3d 384 (2d Dep't 2003), while

---

[1] The assertion is undermined by a reference in the report of Martinez' expert to the possibility of "using the sides of the hatch coaming to maintain his balance." (Fisher Report ¶8.)

7

the Plaintiff cites a number of out-of-circuit federal cases for the proposition that such guidelines are at least relevant. E.g., Keller v. United States, 38 F.3d 16 (1st Cir. 1994).

In any event, the factual record simply does not amount to a prima facie case that the ladder was defective. The Plaintiff does not establish where he was on the ladder when the accident occurred. The photographs and diagrams annexed to the Fisher Report show that a person reaching the top of the ladder from the steering compartment could grab on to the coaming, or onto the hatch cover, which is directly by the edge of the hatch and secured by a stanchion, flatly contradicting the Plaintiff's assertion that he "had no available handhold." The allegation that the ladder was defective is also contradicted by its long and (as far as the record reflects) uneventful history. The Plaintiff notes in his opposition brief that the ladder at issue had been in place for nearly half a century prior to his accident (Pl.'s Opp. Br., Dkt. No. 19, at 13), and avers in his Local Civil Rule 56.1 Statement that he had been working as an oiler on the *Kennedy* "on and off" since 2004 (Pl.'s Local Civil Rule 56.1 Statement ¶¶ 7-8), also without mentioning any other incident relating to the ladder. Between the photographic evidence, the long history of successful use of the ladder by

the Plaintiff and other oilmen, and the fact that the Coast Guard inspected the *Kennedy* and its steering compartment four times per year (Aff. of Brian Walsh, Dkt. No. 26-1, ¶2), there is not sufficient evidence in the record to support a jury finding that the ladder was defective. "[T]he mere fact that an accident occurs and a seaman is injured while using an appurtenance in the performance of his duties cannot, without more, establish that a vessel is unseaworthy." Mosley v. Cia. Mar. Adra, S.A., 314 F.2d 223, 228-29 (2d Cir. 1963); Golden v. City of New York, No. 14 Civ. 2229, 2015 WL 2237540, at *5-6 (S.D.N.Y. May 14, 2015).

The case law cited by Martinez is distinguishable on the facts. The case most on point, Salem v. U.S. Lines Co., 370 U.S. 31 (1962), concerned a 65-foot ladder to a small crow's nest atop a radar tower, which required a sailor "to pivot, putting one foot on the starboard or port ledge, follow it with the other foot, complete his pivot and step forward along the ledge to the platform proper." Id. at 33. That sort of lengthy ladder, which the Salem plaintiff climbed through the open air in darkness, "as the [ship] went at high speed and rolled in rough seas," id., is qualitatively distinct from the relatively short, internal ladder at issue here. The other major case

9

relied on by Martinez, Kuithe v. Gulf Caribe Maritime, Inc., No. 08-0458, 2010 WL 3419998 (S.D. Ala. Aug. 26, 2010), involved a ladder with an "unhappy combination of features," including a lack of "stringers" (the sides of the ladder, present in the instant case (see Pl.'s Local Civil Rule 56.1 Statement, ¶ 33)) and a welded containment box obstructing the ladder, that required climbers to "engage in gymnastics to access the ladder from the deck in order to descend." Id. at *1. As the opinion explained,

> The obstruction of the containment box required users to approach the ladder not straight on but sideways and from a sharp angle aft of the ladder. This angle, combined with the thin rungs and narrow gap between rungs and skin, required users to first place their left foot on a rung at an angle of about 45 degrees to the rung, rather than directly across it at an angle of 90 degrees. These circumstances, plus the awkward placement of the possible handholds (too far aft, too far inboard, and/or too low) required various contortions to allow the user to shift his weight from the deck to the ladder and to square his body with the ladder, all of which raised an unreasonable risk of twisting and injuring a knee.

Id. Like the ladder in Salem, the structure at issue in Kuithe was on the outside of the ship. See id. The ladders in Salem and Kuithe, and the complex acrobatics required to use them, are not comparable to the relatively simple internal ladder at issue here. The additional cases cited by the plaintiff do not deal with ladders and are otherwise distinguishable.

In the absence of evidence that the ladder was defective, there is no basis for a jury to find that the ferry was unseaworthy or that the City was negligent in operating the *Kennedy* with the ladder in use.

The Oil and Grease Claim Fails

Martinez' second argument for liability, put forward under both the Jones Act and the unseaworthiness doctrine, is that an accumulation of oil and grease on the deck of the steering compartment created a hazardous condition that led to his accident.[2] According to Martinez, the *Kennedy*'s steering mechanism consisted of hydraulic pistons which "constantly and continuously leaked oil and grease." (Pl.'s Local Civil Rule 56.1 Statement ¶¶ 15-16.) According to Martinez, there were attempts to contain the oil and grease by using paint cans, oil-absorbent pads, and shallow trays called cofferdams, but these measures would routinely overflow, leading to oil and grease on the deck of the steering compartment. (Id. ¶¶ 17-22.)

---

[2] The City objects that Martinez raises his argument regarding oil and grease for the first time in his opposition brief to the instant motion for summary judgment. However, this is the first substantive motion to be filed in the case. To the extent that the City objects to the Complaint as impermissibly vague, it should have sought a more definite statement or moved to dismiss on that ground before filing its Answer. See Fed. R. Civ. P. 12(b).

11

According to Martinez, he complained to port engineers from the City's Department of Transportation about the condition, but not to his supervisor. (See id. ¶ 20.)

"A seaman is not entitled to a deck or ladder that is free of all oil or grease. Unseaworthiness exists only when the oil or grease creates such a condition of slipperiness that the deck or stairway is no longer reasonably fit for its intended use by the crew." Rice v. Atl. Gulf & Pac. Co., 484 F.2d 1318, 1321 (2d Cir. 1973). Martinez is unable to make this required showing for two reasons.

First, Martinez' assertions about the state of the compartment are backed only by his own affidavit or his own deposition testimony. (See Pl.'s Local Civil Rule 56.1 Statement ¶¶ 15-23 (citing only those sources).) He does include three pictures of the compartment along with his affidavit (Dkt. Nos. 21-1 & 21-2), but those pictures show the oil contained within a cofferdam and two paint cans; Martinez states in his affidavit that the pictures are a fair and accurate representation of the condition of the space on the day of his accident, but also that "there was more oil and grease on the deck when I fell from the ladder." (Martinez Aff., Dkt. No.

12

21, ¶ 6.) Dr. Fisher's report refers to oil and grease only in passing:

> Shortly before starting to climb out of the steering compartment, Mr. Martinez had been mopping up hydraulic oil on the deck of the steering compartment. Apparently, the oil regularly leaks from the oil seals on the steering equipment, and the necessity of mopping it up is essentially routine, during which process it is impossible to avoid getting oil on the bottoms of the footwear. Thus, in addition to the lack of a handhold being available to Mr. Martinez as he was in the upper stage of exiting the hatch, the bottoms of his footwear was [sic] slippery with oil.

(Fisher Report at ¶ 9.) Other than this brief paragraph, which (given the use of the term "apparently") appears to be based entirely on secondhand information, the report is silent on any oily condition or its potential causes. Dr. Fisher's declaration (Dkt. No. 22.) is limited to discussion of the ladder and does not touch on any oily or greasy condition within the compartment.

    Neither Dr. Fisher's brief reference to oil, nor the pictures attached to the affidavit, independently corroborates Martinez' assertion that a "thick, shiny coating of black oil and grease covered the entire steering compartment deck." (Martinez Aff., Dkt. No. 21, ¶ 11.) Something more is required. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving

13

party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50; see Enderby v. Secrets Maroma Beach Riviera Cancun, No. 10 Civ. 1015, 2011 WL 6010224, at *6 (E.D.N.Y. Dec. 1, 2011).

The second major flaw in Martinez' oil and grease argument is that Martinez acknowledged at his deposition that he was the person responsible for keeping the area clean of oil and grease. (Martinez Dep. Tr., Dkt. No. 15-3, at 27:1-3.) Martinez also acknowledges that the oil and grease in the steering compartment is not a permanent condition – in his affidavit, he recalls being ordered to "soogee" the compartment for Coast Guard inspections, using an environmentally safe oil remover and mop to "remove all traces of oil and grease." (Martinez Aff., Dkt. No. 21, ¶ 15.) With the steering compartment capable of being cleaned and with the City having hired someone – Martinez – to do so, it is unclear what untaken measures the Plaintiff contends rendered the vessel unseaworthy or breached the standard of care required by the Jones Act. Summary judgment is therefore granted in favor of the City.

There is a Genuine Dispute Regarding Maintenance and Cure

"'Maintenance and cure' refers to the well-settled doctrine of maritime law that a seaman injured in the performance of his duty is entitled to be treated and cured at the expense of the ship." Hicks v. Tug Patriot, 783 F.3d 939, 940 n.1 (2d Cir. 2015). In this case, the parties differ on whether the Plaintiff's medical bills have been fully paid. The City avers that "all plaintiff's requests to date for maintenance and reimbursement for medical treatment have been honored" (D.'s Br., Dkt. No. 16, at 9), while the Plaintiff attaches two invoices for medical bills, totaling $22,949.27, and asserts that they have not been paid. (Dec. of Andrew Buchsbaum, Dkt. No. 23, ¶3 and Ex. 2.) Since each side's position regarding the status of the bills is backed up only by their own statements, there exists a genuine factual dispute precluding summary judgment. See Anderson, 477 U.S. at 248.

**Conclusion**

15

The City's motion for summary judgment is granted in part and denied in part, as set forth above.

It is so ordered.

New York, NY
March 30, 2016

_____
ROBERT W. SWEET
U.S.D.J.

17